### A. J. ELLESTAD *vs.* NORTHWESTERN ELEVATOR COMPANY.

Opinion filed November 10th, 1896.

#### Owner of Land Presumptive Owner of Crop.

The owner of real estate is presumed, *prima facie*, to own its products, including annual crops. Such presumption, however, is not conclusive and may be rebutted by evidence.

#### Ownership of Crop—Question of Fact for the Jury.

The evidence showed that B. was the owner of land upon which he did not reside, but lived elsewhere in the vicinity of the land. L., from seed purchased from plaintiff, planted, harvested, threshed, and sold a crop raised on said land in 1894. During seeding time, and for a short time prior thereto, L. resided on the land with his family, but resided elsewhere at all other times in question. Whether B. consented or did not consent to such occupancy by L. does not appear. *Held*, that it was not error in the trial court to submit such evidence to the jury upon the question of L.'s ownership of said crop.

#### Sale of Crop was Conversion and Entitled Mortgagee to Possession Before Maturity of Debt Secured.

L. gave a chattel mortgage on the crop to the plaintiff, which was duly filed for record. After the mortgage was filed, but before the maturity of the debt secured by it, L. sold the crop to the defendant, and the defendant received possession thereof in one of its elevators. The mortgage embraced the usual stipulations empowering the mortgagee to take possession of the property at once upon a sale or other disposition of the property by the mortgagor. *Held*, that the sale and delivery of the crop to the defendant by the mortgagor operated, *eo instanti*, to vest in the plaintiff the right to take possession of the crop, and to sue for and recover either the crop itself or its value. Defendant acquired title by its purchase of the crop, but such title was incumbered by the mortgage, of which defendant had constructive notice.

Appeal from District Court, Richland County; *Lauder*, J.

Action by A. J. Ellestad against the Northwestern Elevator Company. Judgment for plaintiff. From the judgment, and an order denying a new trial, defendant appeals.

Affirmed.

*Ball, Watson & Maclay*, for appellant.

The presumption of ownership in Lee was overthrown by proof that the land was anothers. *Millard* v. *McDonald Lumber Co.*, 25 N. W. Rep. 656. The defendant had no actual notice of the

chattel mortgage and received the wheat before the debt secured by the mortgage matured. Its possession was rightful. *Sanford v. D. & D. Elev. Co.*, 2 N. D. Rep. 6. The defendant in trover and conversion may defeat the action by showing title in a third person with whom it is not in privity, where the original taking was not unlawful. *Blakely* v. *Douglas*, 6 At. Rep. 398; *Bibble* v. *Lawrence*, 17 N. W. Rep. 60; *Seymour* v. *Peters*, 35 N. W. Rep. 62; *Railroad* v. *Lewis*, 162 U. S. 366. Plaintiff must show a general or special ownership in the property converted and possession or a legal right to immediate possession at the time of the conversion. *Parker* v. *Bank*, 3 N. D. 87; *Turley* v. *Tucker*, 6 Mo. 583; *Hungerford* v. *Redford*, 29 Wis. 345; *Schulenberg* v. *Harriman*, 21 Wal. 44; *Railroad* v. *Jones*, 27 Ill. 41; *Murphy* v. *Ry. Co.*, 55 Ia. 473, 8 N. W. Rep. 320. Where crops are put upon land without license or authority, trover may be maintained by the owner of the land for their recovery. *Simpkins* v. *Rogers*, 15 Ill. 397; *Crotly* v. *Collins*, 13 Ill. 567; *Hungerford* v. *Redford*, 29 Wis. 345.

*McCumber & Bogart*, for respondent.

The possession of Lee was *prima facie* evidence of ownership of both the land and the crop. 19 Am. and Eng. Enc. L. 53. The presumption is that Lee's possession was lawful and the burden was on the defendant to repel this presumption. *Gilpin* v. *Sierra Nevada Mining Co.*, 23 Pac. Rep. 547; *Lunn* v. *Parker*, 3 N. H. 50; *Newell* v. *Wheeler*, 7 Mass. 189. Lee as a trespasser was the owner of the crops raised by his own labors, as against any other than the owner of the soil. *Lindsay* v. *Winona & St. P. R. R. Co.*, 29 Minn. 411.

WALLIN, C. J. The facts which we deem necessary to a proper disposition of this case, as we gather them from the record, may be briefly stated as follows: In the month of May, 1894, one Lee executed and delivered to plaintiff his promissory note, payable to the plaintiff, for $61.20, and to secure the payment of such note said Lee made and delivered to the plaintiff his chattel mortgage, describing certain land in Richland County, and

whereby he mortgaged to the plaintiff all crops to be sown, grown, or harvested upon such land in the year 1894. The note was given to plaintiff for the purchase of seed wheat, which Lee sowed upon the land, and from which Lee, in 1894, raised, harvested, and threshed a crop of wheat, which aggregated in value a sum much greater than the amount due on the note at the time of the trial. For a short time prior to seeding the land, and during seeding time, Lee resided upon the land, but at all other times in question he resided elsewhere in the vicinity of the land. A son of Lee testified, in substance, as follows: "My father was in possession of the land in the spring and summer of 1894, and raised wheat on it. I and my father and the hired man did the work. My father worked the land." The crop which he raised upon the land that year was from seed wheat furnished him by the plaintiff. The wheat was threshed in September, 1894. There was about 1,100 bushels threshed. This wheat was hauled to defendant's elevator, and was delivered to the agent in charge of the elevator. The fact of the delivery of the wheat and its value are not controverted, nor is the fact that a proper demand was made for the wheat by the plaintiff before bringing the action. There is no claim that the note or any part of it was ever paid. The action is brought to recover damages for the conversion of the wheat, and the plaintiff demands judgment for the sum due on the note, and for certain items of disbursement made by plaintiff in his efforts to recover the possession of the wheat from the defendant. Defendant offered testimony of a documentary character to show that, at the time in question, and prior thereto, and ever since, one Benson, who resided some eight miles distant from the land, was the owner, and was seized of a fee-simple title thereto. The testimony was admitted against objection, but, in the view we take of the case, it will be necessary to pass upon the technical competency of the evidence, and we shall assume, for the purpose of the case, that Benson was the owner of the land prior to and during all the time in question. Benson is not a party to the action, nor does it appear that he has at any time

asserted a claim to the crop, or to any part of it. At the close of the testimony defendant's counsel requested the trial court to return a verdict in its favor, which request was denied, and this ruling is assigned as error in this court. Error is also assigned upon the following instruction, given to the jury: "Now, I instruct you that, because the title to this land was in Mr. Benson, it does not necessarily follow that he owned the crop, because the owner of the land might have rented it. There is no testimony upon the point as to the right Mr. Lee had to the possession of the land, but you have heard the testimony as to who sowed the crop, and who threshed it, and you will determine who owned the crop—Mr. Lee or Mr. Benson. If Mr. Lee owned the crop, then the lien of the mortgage attached, and the plaintiff had a right to the possession of the wheat." The verdict and judgment were for the plaintiff.

The defendant's counsel present the principal question to be determined in the following language, which we quote from their brief: "It will be perceived that but a single question is presented for decision upon this appeal, viz.: was the mortgagor's possession of the land, and the crop produced thereon by his labor, sufficient evidence of his title to such crop, in the face of the proof that the land at all times belonged to another?" Counsel for defendant contend that Benson's ownership of the land carried with it, as an incident, the ownership of the crop raised upon the land; and, secondly, that in conversion the burden is upon the plaintiff to show ownership and the right of possession, and that to defeat the recovery the defendant will be permitted to show title in a stranger. To show that the owner of the land is entitled to the products thereof, counsel cite § 3316 of the Revised Codes, which reads: "The owner of a thing owns also all its products and accessions." The principles of law contended for by counsel as above stated may be conceded, without, as we think, accepting the conclusions for which counsel are contending. It is an essential rule of the common law, and recognized as such in the provision of the Code above cited, that the

ownership of realty carries with it, as an incident thereto, the *prima facie* presumption of the ownership of both the natural products of the land, such as grass and trees, and the emblements, or annually sown crops.   This rule is elementary.   Nevertheless, it is quite clear that such presumptions are not conclusive.   They may be overcome by competent evidence, in a given case, that the natural products or the annual crops do in fact belong to another than the owner.   If this were not the law, then a tenant for years or at will or at sufferance, or a mere licensee, would not be permitted to prove his title to a crop or any part of it.   We do not understand that counsel take such an extreme position.   Their contention seems to be that, in the case under consideration, the evidence of Lee's ownership of the crop, which was not objected to, is not sufficiently cogent to overcome the legal presumption that the owner of the fee owned the crops.   The real question, therefore, is whether the testimony offered by the plaintiff, and admitted without objection, constituted any legal evidence tending to establish Lee's ownership of the crop.   Upon this point we are entirely clear.   The evidence of the plaintiff tends strongly to show that, when Lee made the note and mortgage, and delivered them to the plaintiff, he was the owner of the crop.   The note secured by the mortgage was given to Lee for the seed grain from which the crop was grown upon the land described in the mortgage, and upon which Lee then resided with his family.   The work of seeding, harvesting, threshing, and marketing the grain was done either by Lee personally, or by his procurement, and at his expense.   As we have seen, a son of Lee testified that his father was "in possession" of the land in the spring and summer of 1894, and raised wheat on it.   He also said, "My father worked the land."   And it appears that, while the owner of the land resided in its vicinity, there is no evidence that he ever objected to Lee's occupancy of the land, or ever has at any time made claim to the crop, or any part of it.   We are aware that all of these facts might exist without absolutely proving Lee's ownership of the crop.   It is possible that all that Lee

did in and about the crop might have been done as an employe
of Benson.　But we are dealing with evidence, and the question
presented is whether such evidence has any reasonable tendency
to show ownership in Lee.　We think it does, and that the jury
drew the proper inference of fact from the evidence.　Certainly,
there can be no presumption, under the evidence, that Lee was a
trespasser or a wrongdoer.　An act which may be lawful is not
presumed to be unlawful.　The presumption is exactly the other
way.　*Lewis* v. *Disher*, 32 Wis. 506; Best, Ev. § § 346, 349; *Gilpin* v.
*Mining Co.* (Idaho) 23 Pac. Rep. 547.　The burden was on defend-
ant to show that the possession of Lee was not lawful.　In the
absence of any evidence tending to show that Lee committed a
trespass upon the land, we are not called upon to consider
whether a trespasser becomes the owner of an annual crop raised
by him while a trespasser.

　The note matured in November, 1894.　The grain was delivered
to defendant's elevator by the mortgagor in September of the
same year.　Upon these facts, counsel make the point that, when
the conversion took place, the defendant did not have either
actual possession or the right thereto, and hence that the action
will not lie, under an established rule of law applicable to cases of
conversion; citing *Parker* v. *Bank*, 3 N. D. Rep. 87, 54 N. W. Rep.
313, which announces the familiar general doctrine contended for.
But we think the rule does not apply, or, rather, that it cannot be
invoked by defendant to defeat this action.　A stipulation is con-
tained in the mortgage whereby the mortgagee is empowered to
take possession of the grain at once, in the event of a sale or
other disposition of the grain being made.　The condition upon
which this right came into existence happened, and *eo instanti* the
mortgagee's right to take possession became operative.　The
defendant bought the grain with constructive notice of the mort-
gage, and becomes chargeable with notice of the stipulation to
which we have referred.　True, defendant acquired title as against
the mortgagor (see *Sanford* v. *Elevator Co.*, 2 N. D. Rep. 6, 48 N. W.
Rep. 434), but took such title with the burden of the mortgage.

The mortgagee lost no rights under his mortgage by reason of the sale. The sale entitled the mortgagee to demand and sue for the possession, if the property could be had, and where, as in this case, the property had been converted, the holder could sue for its value. The sale gave plaintiff the right to the immediate possession of the property for purposes of foreclosure. Having this, and failing to secure the actual possession, plaintiff is entitled to sue for its value.

Finding no error in the record, we shall affirm the order and judgment appealed from. All concur.