GERMAN-AMERICAN STATE BANK OF BALFOUR, NORTH DAKOTA, a Corporation, Respondent, v. JOHN ERICKSON, Appellant.

(170 N. W. 854.)

Trial — variance between pleading and proof — evidence — rulings of trial court — prejudicial error.

1. Where, during the trial of a case, the trial court announced a theory of the issues at variance with the issues as framed by the pleadings, and rulings were made upon the admission of testimony in accordance with such theory, a purpose having been evinced to conduct the trial according to the erroneous theory of the issues, it is held that, under the circumstances, such rulings constitute prejudicial error entitling the party adversely affected to a new trial.

**Trial — exceptions to ruling of trial court.**

2. Where a party adversely affected by rulings of the trial court excepts to the rulings, and abandons the trial, and is not required by the trial court to continue, he does not waive the errors.

Opinion filed January 11, 1919. Rehearing denied February 10, 1919.

Appeal from District Court of Pierce County, *Burr,* J.

Reversed.

*Campbell & Jongewaard,* for appellant.

It was prejudicial error for the court to rule out as immaterial a question on cross-examination which tended to prove that a third party, and not the mortgagor, owned the horses when the mortgage was given. Bidgood v. Monarch, 9 N. D. 627; Hawk v. Konouzke, 10 N. D. 39; Thurston v. Osborne, 13 N. D. 512; James v. Wilson, 8 N. D. 186.

We were not first raising this ownership in third person on appeal. Pitts v. Young, 62 N. W. 432.

It is common learning in the law that a man cannot grant or charge that which he hath not. Titusville v. New York, 207 N. Y. 203; 11 C. J. p. 428; Pitts v. Young, 62 N. W. 432; Plano v. Daley, 6 N. D. 330; Russel v. Amundson, 4 N. D. 112.

*Albert Weber,* for respondent.

The sufficiency of the evidence to sustain a judgment given in a trial court to a jury cannot be renewed where no motion for a new trial was made in the court below. Landis Mach. Co. v. Konantz Saddlery Co. 17 N. D. 310; F. A. Patrick & Co. v. Nunnberg, 21 N. D. 377.

It was an error of judgment on the part of defendant's attorney to withdraw from the trial, and the defendant is bound by it. Bacon v. Mitchell, 14 N. D. 454, 4 L.R.A. (N.S.) 244; Juneau County v. Hooker, 67 Wis. 322, 30 N. W. 357; Morris v. Soo R. Co. 32 N. D. 366; Steen v. Neva, 37 N. D. 40.

BIRDZELL, J. This is an appeal from a judgment entered in the district court of Pierce county. The action is one for the recovery of specific personal property, upon which the plaintiff held a chattel mortgage, or for the value thereof, with damages for the detention. In the complaint it is alleged that the plaintiff is entitled to immediate possession of two mares under the terms of a chattel mortgage owned by

it, which was executed and delivered by one Christian Arveson, the owner of the property in question; that the plaintiff has demanded of the defendant the possession of the property, and that defendant has refused to deliver the same. The answer is in form a general denial qualified by some admissions that are immaterial upon this appeal. In addition, the answer contains a counterclaim in which the defendant claims damages by reason of the seizure by the plaintiff of one of the mares named in the mortgage, which the defendant alleged belonged to him *at the time of the commencement of the action.* It appears from testimony adduced upon the trial, that the mares in question were mortgaged to the plaintiff by one Christian Arveson, having previously been bought from the defendant, Erickson, and that both had been turned back to Erickson by reason of the nonpayment of the price. This gave rise to the present suit. Owing to certain rulings made upon the trial, which will be later examined, the defendant's counsel announced that he would no longer participate in the proceedings; whereupon, after the plaintiff had made certain formal proof, the court directed a verdict in its favor for $350.

The rulings adverse to the defendant which led to his withdrawal from the trial were made during the cross-examination of the plaintiff's witness, Christian Arveson, the mortgagor of the property in question. The witness had testified in his direct examination that *he* had bought the horses, and on cross-examination he said that his wife took him over to Erickson's place, as she had the horse. It seems that Arveson and his wife took one of the mares home on that trip, and, at a later time, Mrs. Arveson took the other one home. A crisis was reached when defendant's counsel asked Arveson: "Now, as a matter of fact, your wife went over and bargained for those horses, didn't she?" The question was objected to as being immaterial, and the objection was sustained.

Immediately after this ruling the following colloquy took place between the defendant's attorney and the court:

Mr. Campbell: If that is immaterial, why—as to whether he owned these horses or his wife owned these horses—then we are out of court.

The Court: You don't set that up. If you wanted to prove she was the owner you should have set that up as a separate affirmative defense.

You set up the question of your own ownership; that you are the owner of the horses.

Mr. Campbell: Well, your Honor, there isn't any question.

The Court: I don't know whether there is or not; that is to be proven. Go on now with this case; that is all we want. If they had a mortgage on these horses they would be entitled to it.

Mr. Campbell: I don't want to argue with the court; but there is only one point in this case for us. We sold these horses to Mrs. Arveson; that this man didn't own them at any time; that his mortgage is no mortgage upon her property, and that she turned them back to us, and, therefore, we are the owners at the time of the commencement of this action.

The Court: Why didn't you set that up?

Mr. Campbell: My view is that the denial raises the question of who owns them.

The Court: They allege Christian Arveson was the owner, if you want to show he was not and Mrs. Arveson was; you have sold to her and she turned them back, why didn't you set that up?

Mr. Campbell: We might as well.

The Court: You want to try the case according to the issues that are in the pleadings, that is all we can go by.

Mr. Campbell: Let the record show—

The Court: You can dictate it if you wish.

Mr. Campbell: The defendant, at this time, offers to prove and informs the court that the defense to this action upon which he relies, and which he contends is raised by the pleadings under his denial, is that the mortgagor, C. Arveson, under whose mortgage plaintiff is claiming, is not and never was the owner of the horses; that at the time of the commencement of this action this defendant was the owner of the horse; because that he had sold them to one Hulda Arveson, the wife of C. Arveson, to whom he had sold and delivered them; and that they were not sold to the mortgagor, C. Arveson, and that Hulda Arveson had returned them in settlement of the purchase price to him; which return was made subsequent to the giving of the alleged mortgage to the German-American Bank.

The Court: I wont pass on that part of it, you are entitled to prove

that you are the owner of the property; you have alleged that you are, you are entitled to prove that.

Mr. Campbell: Our only basis of ownership is upon the state of facts as outlined.

The Court: What about that offer of proof?

Mr. Weber: We object to the offer of proof as not being within the issues raised.

The Court: Is that the only issue you are intending to raise?

Mr. Campbell: That is the only issue outside, well, of course, I have practically gone over that. I didn't know about the amount of that debt or any of that kind, the giving of the mortgage. We didn't know anything about it and it is so pleaded.

The Court: The only issue you are raising now is that you want to prove that you are the original owners, and that you had sold them to Hulda Arveson, and that some time after Christian Arveson had given the mortgage to the plaintiff, the mortgage that is in dispute, you claim that you made a settlement with Mrs. Arveson and that she returned the horses to you?

Mr. Campbell: Yes, and that he was never the owner of the property.

The Court: And you kept the note, you never returned the note? You have produced the note, exhibit 8 here, didn't you?

Mr. Campbell: That the note was left in the bank and that after this action was commenced was returned for the purpose of reference to this defendant. We will show, if that is material, about the keeping of the note.

The Court: What about it?

Mr. Weber: Plaintiff resists the offer of proof on the ground that it is not within the issues raised by the pleadings.

The Court: Do you want to amend your pleadings?

Mr. Campbell: No, I take the stand our pleadings raise the issue.

The Court: You don't want to amend? We will allow you an amendment to amend the pleadings to act upon whatever you claim is your defense, so that the matter can be properly tried.

Mr. Campbell: We take the position that the pleadings do not need amendment and will rest on our pleadings.

The Court: All right, I will sustain the objection to the offer of proof so far as the examination of this witness is concerned.

Mr. Campbell: In view of the fact of that being the sole defense upon the pleadings, we will, in view of the attitude and ruling, we will take no further participation in the proceedings.

Under the pleadings in this case the allegation that Christian Arveson was the owner of the property mortgaged was made by the plaintiff, and it was a material fact to be established upon the trial unless it were admitted by the defendant. The defendant nowhere in the answer admitted the ownership of the property to have been in Christian Arveson at any time. On the contrary, this allegation was met with a general denial. It is true that, in the defendant's counterclaim, it was alleged that *at the time of the commencement of the action the* defendant was the owner of the property in question, but this is not in any sense equivalent to an admission that at any time prior thereto Christian Arveson had been the owner. As the issues were explained in the course of the foregoing colloquy, it is clear that it would have been competent for the defendant to establish that Christian Arveson had been the owner of the mares in question. Inasmuch, however, as the trial court, in finally ruling upon the materiality of the evidence in question, limited the ruling so that it would apply only to the examination of the witness then upon the stand, the question before us is whether or not, in view of all of the circumstances, the trial court erred in thus limiting the cross-examination. We are of the opinion that the ruling excepted to, under the circumstances, constitutes reversible error. It is apparent that the court would not have made the ruling except upon the theory that the issue of ownership presented was not properly raised by the pleadings. That the court still persisted in the erroneous theory of the issues in the case further appears from a continuation of the colloquy by way of explanation of its ruling, which was made after the plaintiff's attorney had been directed to proceed with his proof. The court said: "The court doesn't intimate of course, by such ruling as that, that the defendant is prevented from setting forth the defense set forth in ¶ 3 of his *counterclaim,* or the other defenses of his *counterclaim.*" In the view we take of the pleadings, the defendant had a right not only to cross-examine fully upon the question of ownership, but also to establish affirmatively the plaintiff's

and the mortgagor's lack of title under the general denial, regardless of the counterclaim, and the pleadings require no amendment whatever to entitle the defendant to cross-examine fully or to introduce affirmative proof. The witness Arveson having testified affirmatively that he purchased the horses from Erickson, it is our opinion, in view of the vital character of his testimony as bearing upon the issue raised by the defendant, that a broad range of cross-examination touching the transaction, as a result of which Arveson claimed to be the owner, should have been permitted. Of course, it is not intended to hold that a suitor or his attorney may freely abandon the trial of an action whenever, in their judgment, an erroneous ruling has been made, but we are of the opinion that when, as in the case at bar, the trial court has announced an erroneous theory of the issues in a case and has evinced a purpose to compel a trial according to such erroneous theory, it is not incumbent upon a suitor to further participate in the proceedings unless directed so to do by the trial judge. On the contrary, when it appears that the continuation of the trial will serve no purpose except to accentuate an erroneous theory, the prejudice of the ruling is sufficiently demonstrated to warrant another trial.

Since there must be another trial of this case, it is deemed appropriate to note another error in the judgment. The record discloses that at the time the action was begun the plaintiff attempted to regain from Erickson the possession of both mares, and that the sheriff was only able to find one of them, the other, presumably, being no longer in the possession of the defendant. The one he found was left with the defendant under an arrangement which was satisfactory to the sheriff. This mare, then, may properly be considered as in the legal custody of the sheriff acting at the instance of the plaintiff. Section 7635, Compiled Laws of 1913, provides that in case a jury finds a verdict against the defendant and the property has been delivered to the plaintiff, they must find that the plaintiff is entitled to the property, and they must also assess his damages if claimed in the complaint. Under this section, as to the mare which was seized by the sheriff, the jury would only be warranted in finding that the plaintiff was entitled to possession and the damages the defendant must pay for detention. But the judgment is in the alternative for the return of the property or its value. This is erroneous. Even if the property be considered as not in the possession

of the plaintiff, then, under the same section, paragraph 1, the jury should have been instructed to find "the plaintiff's interest therein, since the plaintiff was only a mortgagee, and not the owner of the property."

The foregoing observations concerning the form of the judgment may or may not touch the merits of the case, depending upon the evidence that may be adduced upon a retrial going to establish the plaintiff's interest under its mortgage; also dependent upon whether or not the judgment is so entered that the defendant will obtain credit upon the money judgment for the value of the property already in the possession of the plaintiff.

There can be no doubt of the plaintiff's right to maintain the action in the form in which it is brought. The mortgage running to it gives it the right to take possession in case any attempt should be made to "dispose of such property." A similar provision in a chattel mortgage was construed by this court in the case of Ellestad v. Northwestern Elevator Co. 6 N. D. 88, 69 N. W. 44, and it was held that upon the disposition of property thus mortgaged the right of the mortgagee to take possession arose instanter, and that a mortgagee purchasing mortgaged property is chargeable with the record notice of the stipulation referred to.

The case is remanded for a new trial.

CHRISTIANSON, Ch. J. (dissenting). I am unable to agree with either the conclusion or the reasoning of the majority opinion.

The plaintiff brought this action to recover the possession of two certain horses upon which it held a chattel mortgage. The defendant in his answer admitted that there appeared of record in the register of deed's office a chattel mortgage as set forth in the complaint, and denied the other allegations of the answer. As "a further defense and counterclaim," the defendant averred that he was the owner of one certain mare, which had been taken from his possession by the sheriff, under the claim and delivery proceeding instituted by the plaintiff ancillary to this action. The answer prayed judgment for a dismissal of plaintiff's action, and for the return of the mare in question or the value thereof, and for damages of detention.

The mortgagor, Christian Arveson, was called as a witness in behalf of the plaintiff. He testified that he was the owner of the horses

described in the mortgage, and that they were at his farm in McHenry county at the time the mortgage was executed. When asked, "Where did you get those animals," he answered, "I bought them from Mr. Erickson." He also testified that he gave his note to Mr. Erickson for the purchase price and paid him some cash which was to be indorsed on the note. (During the course of the trial the defendant in this action, on plaintiff's demand, produced the note, and it was offered in evidence and is part of the evidence in this case.)

On cross-examination Arveson was asked, among others, the following questions:

Q. You didn't have anything to do with Mr. Erickson in the buying of these horses?

A. Yes, sir.

Q. Did you see him?

A. I went there to see him and looked the horses over and bought them.

Q. You, yourself, went there, did you?

A. Yes, sir, my wife, took me over there, she had the horse.

Q. Now, who was it talked with Mr. Erickson about buying these horses, you or your wife?

A. Well, *I went there and talked with him and looked at the horses and bought them.*

Q. You did? Isn't it a matter of fact that your wife went with you to look at these horses and to buy them?

A. To look at the horses?

Q. Yes.

A. *No.*

Q. Didn't you tell me out there in the lobby that your wife had told you he had a nice team over there, that she could buy, just yesterday or the day before?

A. I don't remember telling you anything like that.

Q. Now is your memory— You have a good memory on these things, have you?

A. I was asked about that, but *I didn't say that.*

Q. How much were you to pay for the team?

A. Well, whatever the note amounted to and then the cash deducted.

. . . . . . . . . . .

Q. Who went over to get the horses?

A. Well, I was there and told Mr. Erickson that I thought my wife could probably lead one behind the buggy, home.

Q. Who went to get the horses, your or your wife?

A. I went as much as anybody, and I sent her over afterwards after the other one.

Q. Do you remember Mr. Morrow and Mr. Erickson being out at your place at the time you turned the horses back?

A. At the time I turned them back?

Q. Yes.

A. I don't remember of ever turning them back.

Shortly thereafter, and during the course of the same cross-examination, defendant's counsel asked Arveson the following question: "Now, as a matter of fact, your wife went over there and bargained for these horses, didn't she?" Upon an objection to this question being sustained, and following a certain colloquy between the trial judge and defendant's counsel, defendant withdrew from the case, and refused to take any further part in the trial. The proceedings immediately following the above question are set forth in the majority opinion, and it would be useless duplication to set the same forth at length in this opinion.

As stated in the majority opinion, the trial court, after the conclusion of the colloquy, specifically informed defendant's attorney that the ruling made was not intended as any intimation "that the defendant is prevented from setting forth the defense set forth in paragraph 3 of his counterclaim or the other defenses of his counterclaim."

The record also shows that a little later the following further colloquy took place:

The Court: The defendant withdraws then?

Mr. Campbell: We withdraw from any further participation, as shown on the record.

While there are authorities tending to support the views of the trial court that title in a third person must be specially pleaded in order to be available as a defense in an action to recover possession of personal property (Dyson v. Ream, 9 Iowa, 51; Patterson v. Clark, 20 Iowa, 429; Tell v. Beyer, 38 N. Y. 161; Weaver v. Barden, 49 N. Y. 286), I do not believe this to be the correct rule. Under a general denial the defendant should be permitted to introduce any evidence which directly tends to controvert the allegations of the complaint. But it by no means follows that a judgment should be reversed because the trial court made some erroneous ruling either with respect to the pleadings or the examination of witnesses, or both. Appellate courts "do not sit to decide moot questions, but to redress real grievances." McGregor v. Great Northern R. Co. 31 N. D. 471, 489, 154 N. W. 261, Ann. Cas. 1917E, 141. And the question presented to an appellate court is not whether the theories of the trial court or its rulings were in all instances abstractly correct, but whether the complaining party has been prejudiced, and prevented from receiving a fair trial, by reason of the ruling or action complained of. As was said by the supreme court of Wisconsin in a well-reasoned decision: "Stability of determinations of trial courts is of inestimable importance, both to the parties and the public. Technical defects, however numerous, should not constitute a basis for efficient interference. They should not count at all in that regard. Doubts should be resolved in favor of stability. Errors, however clear, inexcusable, or numerous, should be regarded as inconsequential, unless, manifestly, had they not occurred the result to the complaining party might, within reasonable probabilities, have been substantially more favorable to him." Samulski v. Menasha Paper Co. 147 Wis. 285, 293, 133 N. W. 142; see also 4 C. J. 924.

The precise error assigned by the defendant, and upon which the reversal is based, in this case, is that defendant was denied an opportunity to cross-examine the witness, Arveson. The right of cross-examination is a valuable one, and a trial court may not unduly restrict, or arbitrarily limit, cross-examination to the prejudice of any party, but "the scope, extent, and methods used in cross-examination of witnesses is largely within the discretion of the trial court, and its rulings in relation thereto will not constitute a ground for reversal except in a clear case of abuse of discretion." 4 C. J. p. 823.

It is elementary that the appellant has the burden of showing error. And when error is predicated upon a denial of cross-examination "the record must disclose with reasonable certainty that the alleged error in excluding the evidence resulted in substantial injury to the complaining party." 4 C. J. pp. 76, 77, § 1864. It will be noticed that the witness Arveson had already specifically testified on cross-examination that he, and not his wife, had purchased the horses and paid for them by executing a note, and paying some money. The note was produced by the defendant, and is part of the evidence in this case. In view of the answers already given, it is highly improbable that the witness Arveson would have given any answer in response to the question under consideration which would have been favorable to the defendant in this case. It will also be noted that the court expressly restricted the ruling to the witness Arveson, and that he specifically stated that by the ruling he did not intend to prevent defendant from establishing the matters set forth in his defense and counterclaim.

It is true the trial judge intimated during the colloquy that he considered evidence tending to show that Mrs. Arveson was the owner of the horses to be inadmissible, unless such ownership was specially pleaded. This statement by the trial judge, however, was anticipatory. When it was made, defendant was not introducing evidence in support of his defense, but was cross-examining one of plaintiff's witnesses. It is elementary that a party may not as a matter of right introduce evidence "in support of his case or defense, during the cross-examination of his adversaries or his adversaries' witnesses." 38 Cyc. 1355. It will be noted that the trial court expressly limited the ruling to the witness Arveson, and stated that he did not intend to intimate that he would prevent defendant from introducing evidence in support of the defense or counterclaims set forth in the answer. It will be noted, further, that the trial court expressly offered to permit the answer to be amended so as to permit the defendant to introduce evidence in support of his proposed defense. This offer was without condition. This being so, it seems clear that, in any event, the ruling was merely harmless error. Dyett v. Harney, 53 Colo. 381, 127 Pac. 226. Defendant's counsel had already specifically outlined his proposed defense, and it is beyond my comprehension how or in what manner he could have

been prejudiced by conforming to the trial court's suggestion that the answer be amended.

It is contended that the statement by the trial court as to the need of amending the answer might have had a prejudicial effect upon the jury. This contention is so obviously without merit as to be worthy of no extended consideration. If the contention is sound, it would follow that when it becomes necessary to amend a pleading during the course of a trial, the jury should be discharged and a new jury impaneled to try the case upon the amended pleading.

As already stated the question presented to this court is whether the appellant has affirmatively established by the record that he was prevented from obtaining a fair trial by reason of the rulings complained of. Unless he has done so, the judgment should be affirmed. Can it be said upon the record in this case that the defendant was prevented from obtaining a full and fair trial by reason of the rulings of the trial court? Was it not the action of defendant's counsel, if anything, which prevented defendant from proceeding with the trial, presenting any defense he might have had, and obtaining a full and fair hearing on the merits? It seems to me that upon the record in this case both of these questions should be answered against the appellant. In this connection it should also be noted that errors which occur during the course of a trial are frequently cured or rendered harmless by subsequent happenings. In the case at bar, the alleged error could, and probably would, have been cured or rendered harmless by subsequent occurrences, if the defendant had not withdrawn from the case. The withdrawal was after the court had offered to permit the answer to be amended. The defendant reiterated his withdrawal after the court had stated, in effect, that defendant would be permitted to introduce evidence to show that he was the owner of the horses (and this of course would include evidence as to the source of the title),—under paragraph 3 of the answer. Of course, as already stated, the time had not yet arrived for defendant to introduce evidence in support of his affirmative defense and counterclaim. In fact the entire discussion with respect to the sufficiency of the answer was anticipatory of what might, or would, arise during the presentation of defendant's side of the case. But, of course, in this case there was no opportunity to cure the alleged error, or render it harmless. Nor was there any opportunity to ascer-

tain whether defendant did in fact have any evidence tending to show that he did in fact sell the horses to Mrs. Arveson and afterwards received them back from her. This was brought about by defendant's withdrawal from the case.

So far as I can find the instant case is anomalous in the annals of jurisprudence. At least no reported case has been cited by defendant's counsel, and none has been found by any of the members of this court presenting a similar situation.

An appellate court is entitled to have before it the entire record in order to determine whether the complaining party has been prejudiced. And I have grave doubts if a party, who by his own actions in effect prevents a trial from being completed, and a complete record from being presented, is in any position to assert error. If the holding of the majority in this case is sound, then in case the trial court unduly restricts the cross-examination of plaintiff's first witness, defendant may rest upon the technical error made, refuse to participate any further in the trial, and come to this court and obtain a reversal of the judgment, —the rendition of which he did nothing to prevent. He may prosecute an appeal and obtain such reversal, even though the trial court expressly offers to permit the cross-examination to continue, providing the defendant amends the answer in conformity with an offer of proof which defendant has already made orally in the court.

In my opinion the defendant has not shown by the record presented on this appeal that he was prevented from having a fair trial by reason of any ruling made by the trial court.