## BOVEY-SHUTE LUMBER COMPANY, Respondent, v. DODGE ELEVATOR COMPANY, Appellant.

(174 N. W. 88.)

**Chattel mortgages — evidence of lien on crop.**

1. In an action by a chattel mortgagee for the conversion of grain by an elevator company, where it appears that the former record owner of the land in order to protect her rights in the land against a foreclosure of a realty mortgage thereupon, made arrangements whereby the holder of the sheriff's certificate, after the year of redemption, made a contract for a deed to a third party who took the same for the use and benefit of the record owner, and to secure moneys and securities advanced by him, and where such former record owner, in 1915, secured a cropper, furnished the seed grain, and managed the land in such year through the cropper and erected for such cropper a house and barn on the land for which a note and chattel mortgage were given upon their share of the crop to the plaintiff for the lumber furnished, and where, further, it appears, after the execution of such chattel mortgage, the cropper made a written contract with such third party and such record owner also made a written contract with such third party transferring her crop rights to him, and thereafter, the share of the crop involved was threshed and de-

livered to the defendant elevator and the proceeds thereof paid to such third party after direct notice of plaintiff's mortgage and demands, it is *held* that the jury upon the evidence were justified in finding that the plaintiff had a valid lien upon the crop so delivered.

**Chattel mortgages — evidence as to owner of land when chattel mortgage was given.**

2. In such action, it is *held* that the jury were warranted in finding upon the evidence that the former record owner of the land continued the owner thereof at the time the chattel mortgage to the plaintiff was made and filed.

**Chattel mortgages — evidence of conversion of mortgaged grain.**

3. In such action, it is *held* that the verdict of the jury is justified, even though the possession, or the right of possession, of such former record owner is based alone during the year 1915, at the time such mortgage was made and filed, upon the consent and acquiescence of the contract holder.

Opinion filed June 23, 1919. Rehearing denied September 8, 1919.

Action for conversion of grain.

From a judgment entered in favor of the plaintiff and from an order of the District Court, Ward County, *Leighton,* J., denying judgment *non obslante,* or, in the alternative, for a new trial, the defendant appeals.

Affirmed.

*F. B. Lambert,* for appellant.

"An action for the conversion of personal property cannot be maintained unless the plaintiff was in possession or held a legal right to the immediate possession of the property converted, at the time of the conversion." Parker v. Bank, 3 N. D. 87.

"A mortgagee of chattels having present right of possession may maintain an action against a wrongdoer for the conversion of the property embraced in the mortgage." Donovan v. St. Anthony, 7 N. D. 513; Bowers, Conversion, § 123.

"The grantee or devisee of real property subject to a trust acquires a legal estate in property as against all persons except the trustee and those lawfully claiming under them." Comp. Laws 1913, §§ 5273, 5375, 5378.

"Where a person pays a part only of the purchase money of realty, and the title is taken in the name of another, such part must have been paid for some aliquot part of the property to raise a resulting trust for the benefit of the person paying it." Re Wood (D. C.) 5 Fed. 443.

"Where land is purchased, and a party pays a part of the consideration, and another takes the title to the whole land, he becomes a trustee of the person paying such consideration *pro tanto*." Somers v. Overhulser, 67 Cal. 237, 7 Pac. 645; Barroilhet v. Anspacher, 68 Cal. 116, 8 Pac. 804.

"Property purchased by one under the direction or on behalf of another must be taken to be held in trust for the benefit of the principal, on repayment of the money advanced." Rothwell v. Dewees, 2 Black, 613, 17 L. ed. 309; Pindall v. Trevor, 30 Ark. 249; Loomis v. Loomis, 60 Barb. 22.

"If a party purchase for another, and afterwards be reimbursed by that other, a trust results from the reimbursement." Poulet v. Johnson, 25 Ga. 403.

"The conveyance of one holding land in trust to a purchaser without notice for a valuable consideration passes the legal title discharged of the trust." Daggs v. Ewell, 3 Woods, 344, Fed. Cas. No. 3,537; Sorrels v. Sorrels, 4 Ark. 296; Griffin v. Blanchar, 17 Cal. 70; Ricks v. Reed, 19 Cal. 551; Learned v. Tritch, 6 Colo. 432; Saunders v. Richard, 35 Fla. 28, 16 So. 679; Lewis v. Equitable Mortg. Co. 94 Ga. 572, 21 S. E. 224; Prevo v. Walters, 5 Ill. 35; Moore v. Hunter, 6 Ill. 317; Pratt v. Stone, 80 Ill. 440; Hoffman Steam Coal Co. v. Cumberland Coal & I. Co. 16 Md. 456, 77 Am. Dec. 311; Clark v. Rainey, 72 Miss. 151, 16 So. 499; Booraem v. Wells, 19 N. J. Eq. 87; Bracken v. Miller, 4 Watts & S. 102; Wamburzee v. Kennedy, 4 Desauss. 474; Bass v. Wheless, 2 Tenn. Ch. 531; Stewart v. Greenfield, 16 Lea, 13; Ranney v. Hogan, 1 Posey, Unrep. Cas. 253; Cain v. Cox, 23 W. Va. 594; Atkinson v. Greaves, 70 Miss. 42, 11 So. 688.

*B. A. Dickenson* and *Greenleaf, Woodledge, & Lesk,* for respondent.

In a case such as we have at bar the ownership of the crops is a question of fact for the jury. See also Harris v. Frink (N. Y.) 10 Am. Rep. 318; 12 Cyc. 977; 6 Cyc. 1048; Comp. Laws 1913, §§ 5535, 6731; Ellestad v. Elevator Co. 6 N. D. 88.

BRONSON, J. This is an action by the mortgagee for conversion of grain covered in a chattel mortgage upon the crop of 1915. A verdict was rendered for the plaintiff. From a judgment entered pursuant thereto, and from an order denying judgment *non obstante* or in the al-

ternative for a new trial, the defendant has appealed. The facts necessary for a consideration of the rights of the parties herein substantially are as follows:

In 1913 one Mrs. Helgerson was the owner of 280 acres of farm land in Ward county. On March 13, 1913, pursuant to a mortgage foreclosure sale, a sheriff's certificate of sale was issued to the Second National Bank of Minot. Before the year of redemption expired some arrangement was made between Mrs. Helgerson and the bank by which she was granted the right to make a sale of the premises. Pursuant thereto, and pursuant to an agreement with one Holm, on September 2, 1914, the bank on September 2, 1914, executed a contract for a deed to said Holm and received from him a note and mortgage for $3,000 on other lands as security. In this contract there was no reservation of title to the crops to be raised on the premises in the year 1915. On the same day the bank wrote Mrs. Helgerson that sale had been made, through her efforts, of this land to Holm for $6,400, and that one half of the 1914 crop belonged to her providing that the threshing and twine bill was paid, and the first payment of $1,500 and interest to be paid by Holm on December 1, 1913, was so paid. It is not disputed nor claimed by the appellant herein that settlement was not made for the threshing and twine bill and other payments specified. On January 24, 1915, one John Christianson wrote Mrs. Helgerson for the purpose of renting the land in the year 1915. Pursuant to such negotiations said Christianson did enter and take possession of the land as a cropper for the year 1915, pursuant to the usual croppers' plan upon shares. Mrs. Helgerson agreed to erect a frame house and barn upon the premises for the use of such cropper. She accordingly so did, procuring the lumber therefor from the plaintiff herein. To secure payment of the same she gave to the plaintiff on March 30, 1915, a note for $308.05 and a chattel mortgage covering the house and frame barn so built, and her one-half interest in the crops to be grown on the lands during the year 1915. The note became due September 15, 1915. The chattel mortgage was duly filed July 21, 1915. The cropper secured seed grain from Mrs. Helgerson, and seeded and raised a crop of wheat and oats upon the land.

On May 17, 1915, a written croppers' contract was made between said Christianson and said Holm, pursuant to the arrangements made

by Mrs. Helgerson with said Christianson. In the fall of 1915, apparently in November, when the crops raised on the land were threshed, the wheat and oats, covering the share due either Mrs. Helgerson or Mr. Holm, were hauled at the time of the threshing from the land to the elevator of the defendant at Ryder, North Dakota.

Mrs. Helgerson testified that when this grain was being hauled she advised the agent of the defendant that one half of the crop belonged to her, and that she had given security to the plaintiff for the lumber furnished upon such grain. That she advised such agent not to sell such grain without her consent. The agent of the plaintiff also testified that he saw the agent of the defendant about the time that the first load of grain was hauled to the elevator. That the defendant was advised concerning the chattel mortgage upon such grain and that the plaintiff would look to the elevator to protect it; that a few days later he saw the agent again; that settlement had not been made then for the grain, it not having all been hauled in; that he made demand for the grain or the money. In carrying on the threshing operations Mrs. Helgerson arranged for and got help. On October 28, 1915, Mrs. Helgerson and said Holm made a written agreement which provided for settlement of their property rights and transferred to Holm from Mrs. Helgerson her right and interest in the crop of 1915, with the provision, however, that the proceeds of the crop should be applied on the indebtedness of Mrs. Helgerson owing to said Holm, and on a certain $500 note owing by the parties to the Second National Bank. After this time the crop was threshed. On December 18, 1915, the defendant made settlement for such crop by paying Holm on certain storage tickets some $649. There is testimony in the record given by Mr. Holm that he took this contract for the use and benefit of Mrs. Helgerson and in trust for her; that he did it to help her get her title back; that he did not figure on keeping the land and intended to give it back to her.

The defendant has made nineteen specifications of error challenging the rulings of the trial court in the admission of evidence, its instructions to the jury, and its action in denying the plaintiff's motions. These specifications are principally concerned with the contentions of the appellant herein, that upon the record, as a matter of law, Mrs. Helgerson was not the owner of the land; that, therefore, she was not the owner of the crop and could not give a valid mortgage thereupon; that

the oral negotiations had, preceding the cropper's contract and the agreement with Holm in October, 1915, were all merged and expressed in such written agreement and therefore controlling concerning her rights in the land and in the crop; that the agreement between Mrs. Helgerson and Holm, if construed to be a trust, was an express trust and invalid under the statute; that, in any event, Holm, as a trustee, had the title and the right of disposition. We have examined the specifications of error and find the trial court to have committed no error in regard thereto. Upon this record the contentions of the appellant are without merit. The appellant has entirely misconceived the principles of law that apply upon the evidence as adduced. The controverted questions of fact were determined by the jury adversely to the contentions of the appellant. There is ample evidence in the record to justify the finding of the jury that Mrs. Helgerson in the year 1915, when the chattel mortgage was executed and filed, was the owner of the land, and that she was entitled to the possession of the same. There is ample evidence in the record to justify the jury in finding that the title to the lands was taken in the name of Mr. Holm for the purpose of security, and that, pursuant to the agreement between the parties, she was not only the owner of the land, but was entitled to the possession and entitled to farm and make arrangements for farming the land in the year 1915. Upon the verdict of the jury, therefore, Mrs. Helgerson clearly had a right in, and to mortgage, the crop on March 30, 1905. The fact that she subsequently made a written agreement concerning this land after the execution of the mortgage which merged some of the oral agreements theretofore had between the parties, concerning which oral agreements there is substantial conflict in the testimony, did not preclude the jury from finding and determining her rights of ownership as they existed when the mortgage was filed. Even though she was not the owner of the premises under the arrangements made, nevertheless if she were granted the right to farm and crop the land in 1915, with the consent and acquiescence of Holm, she would be the owner of and entitled to such crop. 17 C. J. 382. As bearing on the question of crop rights, see Ellestad v. Northwestern Elevator Co. 6 N. D. 88, 69 N. W. 44; Harris v. Frink, 49 N. Y. 24, 10 Am. Rep. 318; Mitchell v. Tschida, 71 Minn. 133, 73 N. W. 625; Roney v. H. S. Halvorsen Co. 29 N. D. 13, 149 N. W. 688; Gunderson v. Holland, 22 N. D.

258, 133 N. W. 546. There is ample evidence in the record to warrant a jury in so finding.

This is particularly so when it is considered that no reservation of title to the crop of 1915 was made in the contract given to Holm. The record further shows ample notice to the defendant, of plaintiff's rights in, and its demands for, this grain. The judgment and order of the trial court is in all things affirmed, with costs to the respondent.

GRACE, J. I concur in the result.